UNITED STATES of America

v.

Dan ARTHALONY, Defendant.

No. 82–30081.

United States District Court,
C.D. Illinois,
Springfield Division.

April 7, 1983.

Gerald D. Fines, U.S. Atty., Patrick J. Chesley, Asst. U.S. Atty., Springfield, Ill., for plaintiff.

Leo Carroll, Jacksonville, Ill., Bruce Cook, Belleville, Ill., for defendant.

## ORDER

J. WALDO ACKERMAN, Chief Judge.

Defendant Dan Arthalony was tried in this Court in November, 1982, for mail fraud and odometer disclosure violations. He was acquitted by a jury of mail fraud but was convicted of the misdemeanor of failing to give an odometer statement to RBM of Atlanta, Inc., a company owned in part by John Ellis, its President (hereinafter referred to as Ellis).

The background of this case is as follows: Dan Arthalony operated a body shop where he repaired wrecked or salvaged vehicles. Under Illinois law, once a vehicle has been declared a total loss, it must contain an "S.V." designation on its certificate of title, indicating to all concerned that the vehicle is a salvaged vehicle. Neighboring states, like Missouri, do not require any indication on the title of vehicles which would reveal that a particular vehicle was once wrecked. Consequently, Missouri owners, dealers and body shop owners can obtain a higher price for such vehicles than an Illinois owner, dealer or body shop owner. To circumvent this problem, some body shop owners, including defendant Arthalony, began a practice of laundering Illinois "S.V." titles. In

Arthalony's case, he would send his Illinois titles with an "S.V." designation to John Ellis in Georgia, a state which does not require any indication to be placed on a title to show that a car was once wrecked. Ellis would obtain a clean Georgia title (one without the "S.V." designation), and mail the clean title back to Arthalony in Illinois. Arthalony would then exchange his Georgia title for a new Illinois title without the "S.V." on it.

During this transaction, the vehicles in question never left Arthalony's possession—it was a purely paper transaction. Arthalony did not sell, give or bequeath these vehicles to Ellis. He transferred legal title to Ellis, but retained a beneficial interest in the vehicles. Arthalony did not provide an odometer mileage statement to Ellis when he transferred title to him. Likewise, Ellis did not provide an odometer statement to Arthalony when he transferred title back to him. Arthalony was convicted of failing to give an odometer statement to Ellis disclosing the cumulative mileage on the vehicles at the time he transferred the titles to him in Georgia.

In 1972, Congress adopted Subchapter IV of the Motor Vehicle Information and Cost Savings Act (MVICS), 15 U.S.C. § 1981 *et seq.* The Congressional findings and declaration of purpose of the Act are contained in 15 U.S.C. § 1981. Congress found that purchasers, when buying a motor vehicle, rely heavily on the odometer reading as an index of condition and value of the vehicle. Congress further found that purchasers are entitled to rely on the odometer reading as an accurate reflection of the mileage actually traveled by the vehicle and as an indicator of the vehicle's safety and reliability. "It is therefore, the purpose of this subchapter to prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers."

Section 1988 of the Act directs the Secretary of the Department of Transportation to promulgate rules requiring a transferor to give to a transferee in connection with the transfer of ownership of a motor vehicle, a written disclosure of the cumulative mileage registered on the odometer. If the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled, then the transferor must disclose that the actual mileage is unknown. 15 U.S.C. § 1988(a)(1) and (2). Subsection (b) of Section 1988 provides that no transferor shall violate any rule so prescribed.

Congress provided individuals with a private right of action to enforce liability for violations of the odometer requirements. 15 U.S.C. § 1989. Under that provision, any person who, *with intent to defraud,* violates the odometer requirements, is liable for a minimum of $1,500. A person may recover triple his actual damages if that amount exceeds $1,500, together with reasonable attorney's fees and costs. In addition, the Attorney General of the United States can bring an action to restrain violations of the Act or its rules. 15 U.S.C. § 1990.

Because few consumers were utilizing the private enforcement provisions and because the Attorney General was not vigorously pursuing injunctive enforcement actions, Congress decided to provide additional authority to enforce the odometer anti-tampering provisions of the Act. S.Rep. No. 94–155, 94th Cong., 2d Sess. 2, 6 *reprinted in* 1976 U.S.Code Cong. & Ad.News 1718, 1719, 1723. One of those additional provisions provides for enforcement by criminal prosecution. Section 1990c states that

> any person who knowingly and willfully commits any act or causes to be done any act that violates any provision of this subchapter or knowingly and willfully omits to do any act or causes to be omitted any act that is required by any such provision shall be fined not more than $50,000 or imprisoned not more than one year, or both.

15 U.S.C. § 1990c(a). Although it is clear from the legislative history that Congress wanted to give the government an additional tool to accomplish the goals of the Act, there is no indication that Congress intend-

ed to reach conduct less culpable than that covered by the civil section of the Act.

It is undisputed that Arthalony did not intend to defraud Ellis in any respect. The evidence also indicated that Arthalony did not intend to defraud any potential purchasers with respect to the mileage stated on the odometers of these vehicles. There was no evidence presented of odometer tampering or of misstatements on odometer disclosure forms at the time Arthalony actually sold the vehicles. The fraud, if any, involved the clearing of the "S.V." designation from the titles of these vehicles.

The question now before the Court is whether the failure to give an odometer statement to a straw person, where there is no intent to deceive that person or any subsequent owner of the car with respect to the cumulative mileage traveled by the vehicle, constitutes a crime within the scope of 15 U.S.C. § 1990c. The Government contends that it does. The issue appears to be one of first impression.

It is obvious that if criminal liability is imposed in these circumstances, the anomalous result is that a person would be criminally liable in a situation where civil liability would not attach. Clearly, Congress could have made the knowing failure to give an odometer statement with every transfer of title, regardless of the transferor's intent to defraud, a crime. The question, though, is whether, in light of the civil statute, its non-use and Congress' overall intent when it enacted Subchapter IV, Congress intended to include intent to defraud in the meaning of a "knowing and willful" violation of the Act.

Prior to determining the state of mind required to sustain a conviction under the Act, this Court will examine whether Arthalony was a "transferor" within the meaning of the regulations, such that the Act would even apply to him. "Transferor" is defined in 49 C.F.R. § 580.3 as any person who transfers his ownership in a motor vehicle by sale, gift, or any means other than by creation of a security interest. "Transfer," as defined in 15 U.S.C. § 1982, means to change ownership by purchase,

gift or any other means. Although legal title to the vehicles was transferred by the Defendant, there was no intent to transfer his ownership interest to Ellis. There was no sale, no gift, no bequest. If Ellis had refused to retransfer title to Arthalony, Arthalony undoubtedly could have recovered the same through judicial process. As the Illinois Supreme Court recognized in *People v. Chicago Title and Trust Co.,* 75 Ill.2d 479, 27 Ill.Dec. 476, 389 N.E.2d 540 (1979), title to property does not necessarily involve ownership of the property. *Id.* at 489, 27 Ill.Dec. 476, 389 N.E.2d 540. The key elements of ownership are control and the right to enjoy the benefits of the property. *Id.* The court there also noted that under the Federal tax statutes, complete control, as opposed to mere title, constitutes taxable ownership. *Id.* at 491, 27 Ill.Dec. 476, 389 N.E.2d 540.

Thus, although title "may be a factor in determining ownership it is not decisive. Of far greater importance is control of the property and the right to its benefits." *Id.* at 492, 27 Ill.Dec. 476, 389 N.E.2d 540. That the word "owner" will not be given a broad interpretation under the MVICS Act is evidenced by the decision in *Goeman v. Keating,* 498 F.Supp. 700 (D.S.D. 1980). There, the plaintiff purchased an automobile from one William Keating. Although the odometer had been broken and repaired, William had failed to disclose this fact to the plaintiff. Nor did he disclose the actual cumulative mileage or, if that was unknown, that the odometer reading was inaccurate as required by 15 U.S.C. § 1988. Gordon Keating, William's father, was also a named defendant. He held title to the vehicle in question. William, however, had possession and control over the car, he paid the bills to maintain the car, and he actually consummated the sale and retained the proceeds therefrom. The court held that even though title to the car was in Gordon Keating's name, he was not the owner within the meaning of the Act and thus could not be liable to the plaintiff. Thus, it can be seen that a mere title holder will not always be considered to be an own-

er under the Act. Under the facts and circumstances of this case, Arthalony was not a "transferor" within the meaning of the Act.

Turning now to the question of whether an intent to defraud is implicit in a knowing and willful violation of the Act, a review of several civil cases is useful. In *Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381 (D.Neb.1977), *aff'd* 578 F.2d 721 (8th Cir.1978), the Court reviewed the numerous methods by which Congress intended to deter those tempted to roll back or otherwise tamper with odometers. Those methods include both the civil and criminal provisions of the MVICS Act. *Id.* at 1388. As stated above, the private civil section requires proof of an intent to defraud prior to allowing recovery by the plaintiff. *See Birdwell v. Hartsville Motors, Inc.*, 404 F.Supp. 625 (M.D.Tenn.1975) (where defendant admitted that he did not give a mileage disclosure form to plaintiff, court held that although a technical violation of the Act, liability would not be imposed due to lack of proof of intent to defraud).

In *Shipe v. Mason*, 500 F.Supp. 243 (E.D. Tenn.1978), *aff'd* 633 F.2d 218 (6th Cir. 1980), the court noted that the purpose of the Act was to protect purchasers with regard to altered or reset odometers. The court in *Shipe* defined intent to defraud, as required in the motor vehicle statute, as acting wilfully and with the specific intent to deceive any purchaser or potential purchaser of a motor vehicle who inspects the odometer of a motor vehicle as an index to the condition and value of such vehicle. *Id.* at 245.

In *Jones v. Fenton Ford*, 427 F.Supp. 1328 (D.Conn.1977), the court considered whether actual knowledge of an odometer defect must be shown to support a finding of intent to defraud under the MVICS Act. Based on the legislative history of the Act, the court concluded that if a dealer, in the exercise of reasonable care should have known that the mileage reflected on the odometer was incorrect, then the failure to disclose the true mileage as "unknown" would result in liability. *Id.* at 1333. In addition, reckless misstatements would support a finding of fraud in a civil action. *Id.* at 1334–35. In reaching this conclusion, the court noted that a "knowing and willful" violation was required to support criminal penalties under another section of the statute,[1] recognizing that this was a higher standard than the civil intent to defraud.

In light of the purpose of the Act, *i.e.*, to prohibit odometer tampering and to aid purchasers in making a reasoned decision on the value of a particular vehicle, and in light of the inability to recover in a civil action absent proof of intent to defraud, together with the failure of Congress to indicate that it intended to reach previously unactionable conduct, this Court concludes that, at a minimum, in order for the Government to prove a knowing and willful violation of the Act, it must prove that the act or omission was done with an intent to defraud either an immediate purchaser or to facilitate a fraud upon a subsequent purchaser in regard to the odometer reading of a vehicle. The Government did not make this showing as to Arthalony. His failure to give an odometer statement to Ellis resulted from his belief that none would be required, since he was not transferring ownership of the vehicle to Ellis. He had no intent to deceive Ellis or any subsequent purchaser with respect to the cumulative odometer mileage of the vehicles involved.

Accordingly, because Arthalony did not transfer his ownership interest to Ellis and thus was not a transferor within the meaning of the Act, and because Defendant did not intend to defraud anyone with regard to the cumulative mileage existing on the odometers of these vehicles, the conviction by the jury pursuant to 15 U.S.C. § 1990c must be set aside and a judgment of acquittal entered.

Two other defendants, John Ellis and Patrick Leigh, pled guilty to violations of the MVICS Act. They were the straw men living out of Illinois, who transferred clean

---

1. 15 U.S.C. § 1917(b).

titles back to the owners of the vehicles. Their convictions, too, must be vacated. This Court will enter separate orders for that purpose.