**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**John ELLIS, Jr., Defendant-Appellee.**

**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Dan ARTHALONY d/b/a Dan's Auto
Sales, Defendant-Appellee.**

**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**James Patrick LEIGH,
Defendant-Appellee.**

Nos. 83–2062 to 83–2064.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 9, 1984.

Decided July 24, 1984.

John R. Fleder, Dept. of Justice, Civil Div., Washington, D.C., for plaintiff-appellant.

A. Michael Kopec, P.C., Springfield, Ill., John A. Swann, Freisem, Grabbe & Swann, Atlanta, Ga., for defendants-appellees.

Before PELL and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

PELL, Circuit Judge.

In these consolidated appeals the Government challenges the district court's entry of a judgment dismissing the cases against the defendants after defendant Arthalony was found guilty by a jury and defendants Leigh and Ellis pleaded guilty. Arthalony and Leigh originally were charged with mail fraud and violating the criminal section of the odometer requirements of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1990c. The jury found Arthalony not guilty of mail fraud and guilty of violating the Motor Vehicle Act. The Government dismissed the mail fraud charges against Leigh, and Leigh and Ellis pleaded guilty to violating the Motor Vehicle Act. The district court then held that the Government was required to prove that defendants acted with an intent to defraud to establish a violation of the odometer regulations and that no such intent was present under the facts of these cases. The court also found that none of the defendants were "transferors" of automobiles within the meaning of the Act and so were not subject to the odometer requirements.

The charges stemmed from two identical schemes entered into by Arthalony and Ellis and Leigh and Dean Lindsey, who is not involved in this appeal. Arthalony and Lindsey are both automobile dealers operating in Illinois. Illinois law requires that automobiles that have been in a serious accident bear the designation "S.V." on the title to indicate a salvaged vehicle. As the designation "S.V." lowers the price for which an automobile can be sold, both Arthalony and Lindsey wished to launder the "S.V." titles they had to acquire titles without the "S.V." designation. Both men accomplished this by transferring titles of salvaged vehicles to dealers in states that do not require any designation of the title of a salvaged automobile. Arthalony transferred his titles to Ellis in Georgia, while Lindsey cleared his through Leigh in Missouri. Ellis and Leigh obtained new titles without "S.V." on them and returned the titles to Arthalony and Lindsey, who then obtained clean Illinois titles and sold the damaged automobiles to unsuspecting purchasers.

Of the four men, only Lindsey was convicted of mail fraud. The downfall of Arthalony, Ellis, and Leigh was their failure to comply with the odometer requirements of the Motor Vehicle Act. The Act requires the Secretary of Transportation to promulgate rules requiring the transferor of an automobile to disclose the actual mileage of the vehicle or whether the actual mileage is unknown. The Secretary has promulgated regulations requiring transferors to provide written odometer statements. 49 C.F.R. § 580.4 (1982). In the course of laundering the titles the defendants did not provide the required odometer statements to each other.

The odometer regulations of the Motor Vehicle Act can be enforced through private civil suits, 15 U.S.C. § 1989, through actions for injunctive relief brought by either the Attorney General of the United States or the chief law enforcement officer of the state in which the violation occurred, 15 U.S.C. §§ 1990, 1990a, and through

criminal prosecution under 15 U.S.C. § 1990c, which provides that:

> Any person who knowingly and willfully commits any act or causes to be done any act that violates any provision of this subchapter or knowingly and willfully omits to do any act or causes to be omitted any act that is required by any such provision shall be fined not more than $50,000 or imprisoned more than a year, or both.

A private, civil suit requires a showing of the defendant's intent to defraud, rather than the criminal "knowingly and willfully" standard. 15 U.S.C. § 1989. The Attorney General may obtain either injunctive relief or a civil penalty of up to $1,000 per violation without any showing of intent. 15 U.S.C. §§ 1990, 1990b. Similarly, the chief law enforcement officer of the state in which the violation occurred may obtain injunctive relief without any showing of intent. 15 U.S.C. § 1990a.

In a published opinion the district court held that a prosecution under section 1990c requires the same intent to defraud as does a civil action under section 1989. *United States v. Arthalony*, 559 F.Supp. 1385 (C.D.Ill.1983). The court reasoned that the purpose of the Act, which is to protect purchasers of used automobiles, is best served by requiring an intent to defraud in criminal prosecutions. The court noted that Congress added the criminal sanctions in 1976 to bolster enforcement of the odometer requirements, and that Congress had expressed no intention of penalizing actions not previously reached by the civil enforcement provisions. Finally, the court observed that *Jones v. Fenton Ford*, 427 F.Supp. 1328 (D.Conn.1977), supported the proposition that the criminal "knowingly and willfully" standard was greater than the civil intent to defraud standard. The court concluded that, "in order for the Government to prove a knowing and willful violation of the Act, it must prove that the act of omission was done with an intent to defraud either an immediate purchaser or to facilitate a fraud upon a subsequent

purchaser in regard to the odometer reading of a vehicle." 559 F.Supp. at 1388.

Shortly after the district court dismissed the cases against these defendants, the United States Court of Appeals for the Eighth Circuit held that a prosecution under section 1990c does not require proof of an intent to defraud. *United States v. Studna*, 713 F.2d 416, 418 (8th Cir.1983). The court noted that "knowingly and willfully" has been interpreted in the context of tax statutes to mean "an intentional violation of a known legal duty," without any requirement of an intent to defraud. *Id.*

The difference between the district court's analysis and that presented in *Studna* is that the district court apparently did not consider the meaning of the words "knowingly and willfully." The beginning of any statutory analysis is the language of the statute. In *United States v. Illinois Central Railroad Co.*, 303 U.S. 239, 242, 58 S.Ct. 533, 534, 82 L.Ed. 773 (1938), the Court observed that: "In statutes denouncing offenses involving turpitude, 'willfully' is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication." A long line of cases dealing with offenses that are *malum prohibitum* have followed *Illinois Central Railroad* and have found that "knowingly and willfully" means exactly what it says rather than containing a hidden requirement of fraudulent intent. *See, e.g., United States v. John Henricks, Inc.*, 388 F.2d 677, 679 (7th Cir.1968) (conviction for "knowingly and willfully" violating Department of Transportation regulations does not require proof of criminal intent); *Steere Tank Lines, Inc. v. United States*, 330 F.2d 719, 722–23 (5th Cir.1963) (same); *United States v. Franklin*, 188 F.2d 182, 186 (7th Cir.1951) (conviction for knowingly and willfully falsely representing oneself to be a United States citizen requires no proof of fraudulent intent); *United States v. Indiana Trucking, Inc.*, 300 F.Supp. 765 (N.D.Ill.1969) (conviction for knowingly and

willfully using false freight bills in violation of ICC regulations does not require proof of fraudulent intent); *United States v. Lowther Trucking Co.*, 229 F.Supp. 812 (N.D.Ala.1964) (conviction for knowingly and willfully operating motor vehicles in violation of federal regulations does not require criminal intent).

■ In rejecting the normal understanding of "knowingly and willfully" the district court relied heavily upon the apparent conflict between the civil standard of intent to defraud and the criminal standard. Appellees now argue that allowing criminal prosecutions to succeed without a showing of fraudulent intent, while requiring such a showing for private, civil suits, produces an absurd result, and the district court was therefore justified in reading intent to defraud into the criminal provision. We do not agree that prosecutions without a showing of fraudulent intent are absurd. As the court observed in *Studna,* violations "performed with innocent motives have the same capacity to mislead purchasers as those done with evil motives." 713 F.2d at 418. Congress may well have granted the Government broader enforcement powers than it wished to grant private plaintiffs on the reasonable assumption that prosecutors would use more discretion in bringing criminal actions than would litigants seeking monetary awards. If anything, the difference in language between the civil and criminal provisions supports the inference that Congress did not intend to require proof of fraudulent intent in criminal prosecutions. *Studna,* 713 F.2d at 419. This reading of the enforcement scheme is further supported by the fact that civil actions brought by the Government require no proof of intent, indicating that Congress did not intend to limit enforcement actions to those cases in which fraudulent intent could be established.

The court also supported its result by observing that *Jones v. Fenton Ford,* 427 F.Supp. 1328 (D.Conn.1977), supports the proposition that "intent to defraud" under section 1989 is a lesser standard than

"knowingly and willfully" under section 1990c. All that *Jones* stands for is that actual knowledge of the untruth of a statement is not required to prove intent to defraud. The court in *Jones* observed that "knowingly" does not require actual knowledge, but did not hold that "intent to defraud" is somehow a lesser included standard found within "knowingly and willfully". The two standards are simply different. In this circuit neither "knowingly" nor "willfully" has been defined as including fraudulent intent. *See* Federal Criminal Jury Instructions for the Seventh Circuit, 6.03, 6.04 (1980); *United States v. Cina,* 699 F.2d 853 (7th Cir.1983) (approving instruction on "knowingly and willfully" violating odometer regulations that did not include fraudulent intent), *cert. denied,* — U.S. ——, 104 S.Ct. 481, 78 L.Ed.2d 679.

We agree with the Eighth Circuit that intent to defraud is not an element of a violation of section 1990c. We turn, therefore, to the district court's second reason for dismissing the cases against defendants; these defendants were not transferors of automobiles within the meaning of the Act and therefore not subject to the odometer requirements.

■ Under the regulations promulgated by the Secretary "any transferor" is to provide a written odometer statement with the "transfer of ownership of a motor vehicle." "Transferor" is defined by the relevant regulation as "any person who transfers his ownership in a motor vehicle by sale, gift, or other means other than by creation of a security interest." 49 C.F.R. § 580.3 (1982). The district court concluded that defendants had not intended to transfer ownership of the vehicles involved and therefore were not transferors despite the transfer of legal title. The court reasoned that title was not conclusive proof of ownership under Illinois law and that Arthalony and Lindsey could recover title at any time, and therefore had never parted with any ownership interest.

A similar argument was presented to the Eighth Circuit in *Tusa v. Omaha Auto*

*Auction, Inc.*, 712 F.2d 1248 (8th Cir.1983), in which an automobile auction company that held title to a car, but could only transfer title to a particular dealer, claimed that it could not be a transferor as it did not own the car. Although the court agreed that defendant did not own the car in the sense that it could do with it as it pleased, the court nonetheless found that defendant had enough of an ownership interest to be a transferor within the meaning of the Act. The court relied on the fact that Nebraska law makes title conclusive proof of ownership in all but a few circumstances, defendant's own claim of ownership in applying for Nebraska title, and the fact that "even if evidence of ownership under state law were not so overwhelming, we would be inclined to find that [defendant] was an owner *for purposes of the federal statute.*" 712 F.2d at 1252 (emphasis in original). The court noted that Congress intended every person transferring title to give an accurate odometer statement regardless of his ownership interest under state law or his reasons for holding title. The court observed that defendant voluntarily placed itself in the chain of title and claimed to be the owner of the vehicle in applying for title, and so was required to provide an accurate odometer statement.

The reasoning of *Tusa* disposes of defendants' claims here. Illinois law defines the owner of an automobile as the person holding title, Ill.Rev.Stat. ch. 95½ ¶¶ 1–155, 3–100 (Smith-Hurd Supp.1983), and defendants each claimed to own the vehicles when applying for new titles. While this evidence is not conclusive proof of ownership on the question whether Arthalony or Lindsey could recover titles from Ellis and Leigh, it is sufficient indicia of ownership for purposes of the Motor Vehicle Act. Congress intended to adopt a nationwide standard requiring those who transfer automobiles to provide odometer statements. In accomplishing this goal Congress and the Secretary used broad language to describe those falling within the ambit of the Act. To make the application of this standard vary depending upon the person's state of residence and state of

mind would severely undercut the effectiveness of the Act. By all objective evidence defendants here transferred ownership of the automobiles, and nothing more is required to subject them to the requirements of the Act. Defendants may not now claim that the transfers were sham and thereby avoid the consequences of their actions.

For the reasons stated in this opinion, we REVERSE the decision of the district court dismissing the indictments against defendants Arthalony and Leigh, and the information filed against defendant Ellis, and remand to the district court with directions to enter judgments on the verdicts.