**INDUSTRIAL INDEMNITY, Plaintiff,**

**v.**

**ARENA AUTO AUCTION, Defendant.**

**Civ. No. 4–86–33.**

United States District Court,
D. Minnesota,
Fourth Division.

July 2, 1986.

David E. Rollwagen, Johnson & Lindberg, P.A., Minneapolis, for plaintiff.

James S. Simonson and William J. Fisher, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion for summary judgment. The Court will grant that motion.

### FACTS

Defendant Arena Auto Auction Inc. (Arena) is a Chicago-based automobile wholesaler incorporated in Delaware. Arena conducts auctions of automobiles for dealers, but it does not own the vehicles. Rather, Arena provides a forum for sellers and purchasers of automobiles. On each transaction Arena receives a fee from both the buyer and the seller. Arena was incorporated on November 28, 1983 and it began conducting its auctions on January 3, 1984. Eggleston aff. ¶ 2, 8–9.[1] Prior to Arena's commencement of operations, the automobile auction existed under different ownership. See Tesler 8–9.[2]

The present action arises from the purchase of an automobile at Arena's auction. On January 24, 1984, Irv Tesler, owner of Southtown Freeway Toyota (Southtown) in Bloomington, Minnesota purchased a 1980 Toyota Cressida (Toyota) at the auction. Tesler has been attending this auction on and off for approximately the last 25 years. Tesler 7. Arena sets forth the rules of its auction in a document titled "Auction Policies," which is available to all auction buyers. This document expressly states that Arena "does not guarantee the accuracy of odometer readings nor assumes responsibility thereof." Eggleston aff. ¶ 12, exh. C. Tesler states that he cannot recall ever seeing the Auction Policies document, and he speculates that the document came into being after defendant Arena assumed ownership of the auction. Tesler 25. Tesler further testified that his understanding was that if the auctioneer did not announce that the odometer reading was not actual mileage, that, as far as he was concerned, he could assume the odometer showed actual mileage. Id. at 45–46, 73–74.

The Toyota which Tesler purchased at the auction on January 24, 1984 was owned by Billy Mark Motors, an Illinois automobile dealer. Defendant Arena never owned the Toyota. Eggleston aff. ¶ 4, 11, and Tesler exh. 6 (title certificate). Prior to the sale of the Toyota at the auction, Billy Mark Motors completed and signed the odometer mileage statement.[3] The statement indicates that Billy Mark Motors states that the actual mileage on the Toyota was 41,308 miles. Eggleston aff. ¶ 4, exh. A.

In his first deposition, Tesler could not recall having a conversation with any employee of defendant regarding the mileage of the Toyota. Tesler 46. At his second deposition, Tesler stated that prior to purchasing the Toyota, an auctioneer announced that the mileage on the car was

---

1. References to Eggleston's affidavit denote his May 20, 1986 affidavit.

2. A name followed by a number refers to a page number of a deposition transcript.

3. Such a statement is required under 15 U.S.C. § 1988.

actual. Tesler 75–76. Tesler later testified that the auctioneer was stating that the federal odometer form indicated that the mileage was actual. (The form could have indicated that the odometer mileage was other than actual.) *Id.* at 87. Tesler also stated that he relied in part on the auctioneer's statement in concluding that the Toyota's mileage was accurately reflected on the odometer. *Id.* at 92. Defendant says that auctioneers sometimes state what the odometer statement lists as the mileage, but auctioneers never state that the listed mileage is true or accurate. Eggleston aff. ¶ 7. Defendant adds that, to its knowledge, none of its employees or agents made any representation to Tesler regarding the mileage of the Toyota. *Id.* at ¶ 14.

After bidding on the Toyota for $6,425 plus a $25 fee, Tesler received the odometer statement signed by Billy Mark Motors, as well as an auction block ticket. *Id.* at ¶ 5, exh. A and B; Tesler 58–59. Defendant Arena completes the auction block ticket, and the ticket lists the purchase price and mileage of the automobile. The ticket further declares that defendant Arena does not guarantee or warranty the accuracy of the odometer reading. Eggleston aff. ¶ 5, exh. B. Tesler indicated that he relied on these two documents in concluding that the Toyota's listed mileage was accurate. *See* Tesler 92. On the day that he purchased the Toyota, Tesler paid for the automobile by check made out to defendant Arena. *Id.* at 59. (Defendant Arena receives checks from the purchaser and then turns around and issues a check to the seller. Defendant Arena says this procedure promotes administrative efficiency and insures that it receives its fees. *See* Eggleston aff. ¶ 9.) Tesler gave defendant the check after, or at the same time, he received the auction block ticket. *See* Tesler 59. Tesler testified that he does not recall whether he received the title on the date of purchase or at a later date. He added that frequently he will receive a title subsequent to purchasing a vehicle. Tesler 61–62.

After purchasing the Toyota, Southtown sold it on February 29, 1984. The odometer reading was 41,308 (or slightly greater) at this time. The purchaser of the Toyota experienced difficulties with the vehicle, and she undertook an investigation which revealed that the odometer reading was false. The actual mileage on the car was approximately 93,000 miles, more than 50,000 miles greater than the odometer indicated. The purchaser commenced an action against Southtown, eventually settling her claim for $10,000. Southtown's insurer, plaintiff Industrial Indemnity, paid the settlement, and became subrogated to Southtown's rights. *See* Fugle aff.; Complaint ¶ VI.

Plaintiff commenced the present action in Hennepin County District Court under the Motor Vehicle Information and Cost Savings Act (Odometer Act), 15 U.S.C. §§ 1981–91, and a common law misrepresentation theory. Plaintiff seeks $30,000, which is three times its actual damages of $10,000,[4] and attorneys' fees. Defendant removed this action to federal court on January 10, 1986. Subsequently, defendant moved to dismiss this action for lack of personal jurisdiction or improper venue, but the Court denied that motion orally on April 23, 1986 and by written order dated May 1, 1986.

DISCUSSION

Summary Judgment

A defendant is not entitled to summary judgment unless the defendant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). Summary judgment is an extreme remedy that should not be granted unless the moving party has established a right to judgment with such clarity as to leave no room for doubt and unless the nonmoving party is not entitled to recover under any discernible circumstances. *E.g., Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980). In considering a summary judgment motion, a court must view the facts most favorably to the nonmoving party and give that party the benefit of all reasonable

---

4. The statute provides for treble damages and attorneys' fees. 15 U.S.C. § 1989(a)(1) and (2).

inferences that can be drawn from the facts. *E.g., Hartford Accident & Indemnity Co. v. Stauffer Chemical Co.,* 741 F.2d 1142, 1144–45 (8th Cir.1984). The non-moving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Salinas v. School District of Kansas City,* 751 F.2d 288, 289 (8th Cir.1984).

*Odometer Act*

■ Count II of plaintiff's complaint is based on the federal Odometer Act. The Odometer Act requires any "transferor" of a motor vehicle to disclose to the "transferee" mileage information about the vehicle. 15 U.S.C. § 1988(a). The statute further prohibits transferors from violating any rule the Secretary of Transportation promulgates under the statute, and prohibits transferors from making any false statements concerning disclosures required by those rules. 15 U.S.C. § 1988(b). Regulations promulgated under the Odometer Act define a "transferor" as "any person who transfers his ownership in a motor vehicle." 49 C.F.R. § 580.3.

A number of courts have interpreted this statutory and regulatory language and concluded that only entities or individuals which had an ownership interest in a vehicle could be liable under section 1988. *E.g., McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 229–30 (1st Cir.1980); *Ryan v. Edwards,* 592 F.2d 756, 762 (4th Cir.1979); *Cwiakala v. Economy Autos, Ltd.,* 587 F.Supp. 1462, 1465 (N.D.Ind. 1984). The United States Court of Appeals for the Eighth Circuit took this view in *Duval v. Midwest Auto City, Inc.,* 578 F.2d 721 (8th Cir.1978). The court ruled that the president of an automobile dealership could not be personally liable under section 1988 because he did not have an ownership interest in the vehicle. *Duval,* 578 F.2d at 725. *Contra Stier v. Park Pontiac, Inc.,* 391 F.Supp. 397, 401 (S.D.W.Va.1975) (although corporation owned vehicle, agents of corporation could also be liable under section 1988).

Courts have also dealt with the specific situation of whether an automobile auctioneer, like defendant, can be liable under section 1988. Three unreported decisions have held that an automobile auctioneer which did not have title to the vehicle, could not be liable under section 1988. *American Hardware Mutual v. Rood,* No. 85–C–3459, slip op. at 3 (N.D.Ill. Oct. 18, 1985) [Available on WESTLAW, DCTU database]; *Lile v. Louisville Auto Auction,* No. N.A. 84–206–C, slip op. at 3–4 (S.D.Ind. Oct. 10, 1985) [Available on WESTLAW, DCTU database]; *Sunniday Chevrolet Inc. v. Louisville Auto Auction,* No. N.A. 77–3–C, slip op. at 3 (S.D.Ind. Sept. 20, 1977). The court in *American Hardware Mutual,* slip op. at 3, noted that the auction rules explicitly stated that the auction did not guarantee the accuracy of the odometer reading. The court concluded that if such an auctioneer could be held liable under section 1988, then all auctioneers would have to verify car odometers. Such a result, observed the court, would change the entire nature of the auto auction sales format.

Where automobile auctioneers own title to a vehicle, however, courts have held them liable under section 1988. *Tusa v. Omaha Auto Auction, Inc.,* 712 F.2d 1248, 1251–53 (8th Cir.1983); *Kantorczyk v. New Stanton Auto Auction, Inc.,* 433 F.Supp. 889, 892–94 (W.D.Pa.1977). In *Tusa,* the Eighth Circuit rejected the automobile auctioneer's argument that even though it held title to the vehicle, it was only acting as an agent for the actual seller of the vehicle. *Tusa,* 712 F.2d at 1251. The Eighth Circuit pointed to strong evidence that the auctioneer owned the vehicle for a brief period of time. *Tusa,* 712 F.2d at 1251. Significantly, the Eighth Circuit went on to state that

> even if evidence of ownership under state law were not so overwhelming, we would be inclined to find [the auctioneer] was an owner *for purposes of the federal statute.* Because we are dealing with the meaning of words in a federal statute, state law definitions of ownership are not conclusive.... We believe that the purposes of the statute can be met

only if a party in [the auctioneer's] position is considered a transferor....

*Tusa*, 712 F.2d at 1252.

In the present action, defendant has put forth affidavit testimony indicating that it never owned the Toyota. In addition, the title certificate for the Toyota does not list defendant as an owner. Plaintiff has not rebutted this evidence, and thus a genuine fact issue does not exist over defendant's lack of ownership of the Toyota. (Plaintiff states in its brief that "it does not appear that [defendant] briefly held title to the" Toyota.) Defendant reasons that since it did not own the Toyota, it is not subject to liability under section 1988.

Plaintiff tries to escape this conclusion by pointing to the Eighth Circuit's language in *Tusa* stating that even if an auctioneer is not an owner of a car under state law, the auctioneer can still be a transferor for purposes of the federal Odometer Act. The *Tusa* court further observed that "Congress clearly wanted each transferor to prepare as accurate a disclosure statement as possible, even if the person had no role in odometer tampering." *Tusa*, 712 F.2d at 1252. Relying on *Tusa*, the Seventh Circuit concluded that automobile dealers who transferred title as part of a sham transaction had sufficient indicia of ownership to be transferors under section 1988. Thus, these dealers were subject to the odometer disclosure requirement. *United States v. Ellis*, 739 F.2d 1250, 1254 (7th Cir.1984).

Plaintiff argues that defendant also had sufficient indicia of ownership which made defendant a transferor under section 1988. Plaintiff points to the fact that when Tesler bought the Toyota, he only dealt with defendant's employees and he never dealt with anyone from Billy Mark Motors. Plaintiff adds that Tesler made his check out to defendant. Yet neither *Tusa* nor *Ellis* relied on indicia of ownership like the indicia to which plaintiff points. In *Tusa*, the Eighth Circuit was responding to the auction company's argument that, even though it briefly held title, it was not actually an owner of the vehicle. The Eighth Circuit noted that strong evidence of actual ownership existed, but regardless of that evidence, the auction company was still an owner in terms of the Odometer Act. The court concluded that the auction company would be subject to the act, even if it weren't the true owner, because the auction company briefly held title. The court stated that it was interpreting the Odometer Act "as it relate[d] to an auto auction company which briefly h[eld] title" and the court ruled that the company's brief retention of title made the company a transferor subject to the Odometer Act. *Tusa*, 712 F.2d at 1253.[5]

The Seventh Circuit case also involved auto dealers who briefly held title to the vehicles in question. The auto dealers argued that even though title changed, ownership in the cars really had not changed. The Seventh Circuit stated that while holding title was not conclusive proof of ownership, holding title was a sufficient indicia of ownership for purposes of the Odometer Act. In reaching this decision, the court interpreted *Tusa* to state that

> Congress intended every person transferring title to give an accurate odometer statement regardless of his ownership interest under state law or his reasons for holding title.

*Ellis*, 739 F.2d at 1254.

In sum, a key ingredient present in both *Tusa* and *Ellis* was that the defendants

---

5. This interpretation of *Tusa* is consistent with the Eighth Circuit's observations on the purposes of the Odometer Act. The court stated that the law sought to have each transferor prepare an accurate disclosure statement and that the company should not be able to "process cars and give out mileage disclosure statements which" the company should have known, through independent observations, were false. *Tusa*, 712 F.2d at 1252–53. (Thus, a tranferee who receives an odometer statement, and later discovers that the statement was likely false, cannot turn around and repeat the inaccurate mileage disclosure.) Giving out mileage disclosure statements appears to mean making a new statement, and the auction company defendant in *Tusa* did complete a new disclosure statement. In the present action, by contrast, defendant did not make out a disclosure statement, it simply passed on Billy Mark Motor's disclosure statement.

actually held title for a brief period of time. The *Ellis* court explicitly stated that holding title was a sufficient indicia of ownership for the Odometer Act, and it did not examine indicia of ownership other than title. Since defendant Arena did not own or hold title to the Toyota, defendant is not subject to liability under section 1988 of the Odometer Act. Accordingly, the Court will grant summary judgment on Count II of plaintiff's complaint.

*Misrepresentation*

■ Plaintiff's first cause of action is a common law misrepresentation claim.[6] To recover under this count, two of the essential elements which plaintiff must establish are that defendant made a false representation and that plaintiff justifiably relied on it. *Midland National Bank v. Perranoski,* 299 N.W.2d 404, 411 (Minn.1980); *Hanson v. Ford Motor Co.,* 278 F.2d 586, 591 (8th Cir.1960).

Defendant claims that it is entitled to summary judgment because no genuine dispute exists regarding the fact that no employee or agent of defendant ever represented that the mileage on the Toyota was actual. Tesler, however, did state that the auctioneer announced prior to the sale of the Toyota that its mileage was actual. Tesler 74–75. Defendant acknowledges this testimony, but it contends that the auctioneer was only stating that the owner of the Toyota (Billy Mark Motors) indicated that the mileage was actual, not that defendant represented that the odometer reading was in fact correct. At one juncture, Tesler does appear to agree that the auctioneer was simply relating what information (actual or non-actual mileage) was indicated on the odometer disclosure form. *Id.* at 87. Yet in other parts of his testimony, Tesler states that he relied, in part, on the auctioneer's announcement in concluding the mileage was actual. *Id.* at 92. Tesler also testified that his understanding was that if the auctioneer announced a

car's mileage as actual, he could assume the mileage on the odometer to be correct. *Id.* at 45–46, 73–74. While it appears that the auctioneer was only parroting what the disclosure statement said, a fact question does exist over what the auctioneer was or was not representing by announcing that the Toyota had actual mileage.

Nevertheless, defendant is entitled to summary judgment on Count I because Tesler could not have justifiably relied on the auctioneer's purported representation in light of defendant's written statements that it did not guarantee the accuracy of the odometer readings. This statement appears in defendant's Auction Policies document and on the auction block ticket. With respect to the Auction Policies document, Tesler cannot recall ever having seen it. The auction block ticket, though, presents a different situation. Tesler received this ticket either before or at the same time he gave defendant a check for the Toyota. *See id.* at 59. The ticket explicitly states, in bold type, that defendant does not guaranty or warranty the accuracy of the car's odometer reading. Under Minnesota law, a general disclaimer cannot negate reliance on even an innocent misrepresentation. *Clements Auto Co. v. Service Bureau Corp.,* 444 F.2d 169, 178 (8th Cir.1971). The auction block ticket, however, does not generally state that defendant makes no warranties, rather it specifically deals with the accuracy of mileage on odometers. Where a disclaimer specifically states a fact completely antithetical to the claimed misrepresentation, the language of the disclaimer negates allegations of fraud. *See Clements Auto Co.,* 444 F.2d at 179. The language of the auction block ticket, moreover, is straightforward and understandable by laymen, especially experienced auto dealers such as Tesler. *Cf. Weise v. Red Owl Stores, Inc.,* 286 Minn. 199, 175 N.W.2d 184, 187 (1970) (par-

---

**6.** Since defendant removed this action to federal court on the basis of both federal question and diversity jurisdiction, the Court is obligated to deal with the state law misrepresentation claim. In any event, the Court would exercise its dis-

cretion and reach this state law issue because the Court has invested time on the issue and is prepared to rule on it. *See Koke v. Stifel, Nicolaus & Co.,* 620 F.2d 1340, 1346 (8th Cir.1980).

ty could rely on representation even though document contradicted representation, where document contained ambiguous legal language which a layman could reasonably believe supported the representation). In the face of this disclaimer, Tesler could not, as a matter of law, justifiably rely on the auctioneer's purported representation regarding the Toyota's mileage. Summary judgment is thus appropriate on Count I.

Based on the foregoing, and upon all the files, records, and proceedings in this matter,

IT IS ORDERED that defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.